## No. 24-10557

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

AMY ARZAMENDI, ON BEHALF OF HERSELF AND A CLASS OF
SIMILARLY SITUATED INDIVIDUALS; MICHAEL C. ORLOFF, ON BEHALF
OF HIMSELF AND A CLASS OF SIMILARLY SITUATED INDIVIDUALS;
BROOKE STADLER, ON BEHALF OF HERSELF AND A CLASS OF
SIMILARLY SITUATED INDIVIDUALS,

*Plaintiffs - Appellants*

v.

LLOYD J. AUSTIN, III, SECRETARY, U.S. DEPARTMENT OF DEFENSE, IN
BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITY; KATHLEEN H.
HICKS, DEPUTY SECRETARY OF DEFENSE, IN BOTH HER INDIVIDUAL
AND OFFICIAL CAPACITY; GILBERT R. CISNEROS, JR., VICE ADMIRAL,
UNDER SECRETARY OF DEFENSE, IN BOTH HIS INDIVIDUAL AND
OFFICIAL CAPACITY; THE DEPARTMENT OF DEFENSE,

*Defendants - Appellees*

On Appeal from the United States District Court
for the Northern District of Texas
4:23-CV-770

## OPENING BRIEF FOR APPELLANTS

EDWARD SCOTT LLOYD
*Lloyd Law Group, PLLC*
15 Chester Street
Front Royal, VA 22630
(540) 823-1110
Fax: (540) 583-4279
scott@lloydlg.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Lloyd Austin, III, Secretary, U.S. Department of Defense | Sarah Clark of U.S. Department of Justice Washington, DC |
| Lloyd Austin, III, Secretary, U.S. Department of Defense | Robert Merritt of U.S. Department of Justice Washington, DC |
| Gilbert Cisneros | Sarah Clark of U.S. Department of Justice Washington, DC |
| Gilbert Cisneros | Robert Merritt of U.S. Department of Justice Washington, DC |
| Department of Defense | Sarah Clark of U.S. Department of Justice Washington, DC |
| Department of Defense | Robert Merritt of U.S. Department of Justice Washington, DC |
| Kathleen Hicks | Sarah Clark of U.S. Department of Justice Washington, DC |
| Kathleen Hicks | Robert Merritt of U.S. Department of Justice Washington, DC |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Amy Arzamendi | E. Scott Lloyd of Lloyd Law Group, P.L.L.C., Front Royal, VA |
| Michael Orloff | E. Scott Lloyd of Lloyd Law Group, P.L.L.C., Front Royal, VA |
| Brooke Stadler | E. Scott Lloyd of Lloyd Law Group, P.L.L.C., Front Royal, VA |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Putative class members | E. Scott Lloyd of Lloyd Law Group, P.L.L.C., Front Royal, VA |

/s/E. Scott Lloyd
*Attorney of record for*
*plaintiffs-appellants*

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be helpful here. The case originated as a class complaint implicating potentially thousands of class members and included seven counts, some of which the plaintiffs-appellants did not defend at the motion to dismiss phase. Additionally, the District Court implicates several legal theories. While Appellants hope they can sufficiently articulate the nuances of the case in briefing, it is Appellants' preference that they have the benefit of oral argument to supplement it.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................................ii

STATEMENT REGARDING ORAL ARGUMENT .................................................. iv

TABLE OF CONTENTS ..................................................................................................v

TABLE OF AUTHORITIES ...........................................................................................1

JURISDICTIONAL STATEMENT ...............................................................................4

STANDARD OF REVIEW .............................................................................................4

STATEMENT OF THE ISSUES .....................................................................................4

STATEMENT OF THE CASE ........................................................................................5

SUMMARY OF THE ARGUMENT ..............................................................................6

ARGUMENT ....................................................................................................................7

   I.   The Mootness Doctrine is Inapplicable to Plaintiff-Appellants' Claims for
   Money Damages ........................................................................................................7

   II.   Plaintiffs Suffered Employment Harm ............................................................. 10

   III.   Plaintiffs' Masking and Testing Claims Were Sufficiently Articulated to
   Survive a Motion to Dismiss ............................................................................... 14

CONCLUSION ............................................................................................................ 17

CERTIFICATE OF SERVICE .................................................................................... 18

CERTIFICATE OF COMPLIANCE .......................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Arlington Transit Mix, Inc.,*
   957 F.2d 219 (6th Cir. 1991) ........................................................19

*Ashcroft v. Iqbal,*
   556 U.S. 662–79 (2009) .............................................................23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955 (2007) ...........................................23

*Bernhardt v. County of L.A.,*
   279 F.3d 862 (9th Cir. 2002) .......................................................12

*Brindson v. McAllen Indep. Sch. Dist.,*
   863 F.3d 338 (5th Cir. 2017) .......................................................11

*Carey v. Piphus,*
   435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ...................12

*Caspersen v. W. Union, LLC,*
   2023 WL 6602123 (D. Colo. Oct. 10, 2023) ...........................20, 22

*Doe v. Delie,*
   257 F.3d 309 (3d. Cir. 2001) .......................................................12

*Gregson v. Zurich Am. Ins. Co.,*
   322 F.3d 883, 885 (5th Cir. 2003) .................................................4

*Green v. McKaskle,*
   788 F.2d 1116 (5th Cir. 1986) .....................................................12

*Henson v. Honor Comm. of Univ. of Va.*,
  719 F.2d 69 (4th Cir. 1983) ........................................................................12

*Hollis v. Biden*,
  2023 U.S. App. LEXIS 12897 (5th Cir. May 18, 2023) ...................................11

*Muldrow v. City of St. Louis*,
  144 S. Ct. 967 (2024) ................................................................................18

*Murray v. Bd. of Trs., Univ. of Louisville*,
  659 F.2d 77 (6th Cir. 1981) ........................................................................12

*Rutter v. Picerne Dev. Corp., No. H-07-3002*,
  2007 U.S. Dist. LEXIS 90690 (S.D. Tex. Dec. 10, 2007) ...............................23

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ..................................................................................22

*United States v. Texas*,
  599 U.S. 670 (2023) ..................................................................................11

*Utah Animal Rights Coalition v. Salt Lake City Co.*,
  371 F.3d 1248 (10th Cir. 2004) ...................................................................13

*Van Wie v. Pataki*,
  267 F.3d 109 (2d Cir. 2001) .......................................................................12

*Ward v. Santa Fe Indep. Sch. Dist.*,
  393 F.3d 599 (5th Cir. 2004) (per curiam) ...................................................12

**Statutes**

§ 3533.3 .....................................................................................................12

28 U.S. Code § 1291 ....................................................................................4

**Other**

5th Cir Rule 28.2.1 ................................................................................iii

5th Cir. R. 32.1 .............................................................................. 27, 28

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3533.3 (3d ed. 1998) .............................12

Fed. R. App. P. 28 ...............................................................................28

Fed. R. App. P. 32 .......................................................................... 27, 28

Fed. R. Civ. P. 8 ...................................................................................22

Federal Rules of Civil Procedure 12 ...................................................... 7, 8

Rule 12 ................................................................................................8

# JURISDICTIONAL STATEMENT

This court has jurisdiction pursuant to 28 U.S. Code § 1291.

# STANDARD OF REVIEW

The standard of review for the appeal of order granting a 12(b)(6) motion to dismiss is *de novo*. *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003).

# STATEMENT OF THE ISSUES

1. Whether the mootness doctrine applies to claims that include prayers for money damages, including compensatory damages, punitive damages, attorneys' fees, and costs.

2. What constitutes an employment harm for the purpose of a claim of religious discrimination under Title VII of the Civil Rights Act and a claim of "regarded as" disability discrimination under the Rehabilitation Act?

3. Must a plaintiff plead the specifics of his religious beliefs in order to state a plausible claim for religious accommodation under Title VII of the Civil Rights Act?

# STATEMENT OF THE CASE

Plaintiffs and putative class agents Amy Arzamendi, Michael Orloff, and Brooke Stadler, all civilian employees of the Department of Defense (DoD), filed an action against their employer on July 23, 2023, which they amended on January 31, 2024.

The action alleged harms arising out of Defendants' COVID-19 vaccination, testing, masking, and distancing policies. It brought counts of failure to accommodate religious beliefs (Count I), disparate treatment—religious beliefs (Count II), religious harassment / hostile work environment (Count III), and disparate impact—religious beliefs (Count VI) under Title VII of the Civil Rights Act. They furthermore brought claims against the Department of Defense, Secretary Lloyd Austin in his official and individual capacities, Deputy Secretary Kathleen Hicks in her official and individual capacities, and Deputy Secretary Gilbert Cisneros in his official and individual capacities under the Religious Freedom Restoration Act (Count V). The individual-capacity claims were for money damages. Finally, Plaintiffs brought claims for money damages under the Rehabilitation Act for "regarded as" discrimination (Count VI), and a *Bivens* claim for money damages under the Fifth Amendment of the Constitution (Count VII).

Defendants filed motions to dismiss in both their official and individual capacities pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In their reply brief to the official-capacity claims, Plaintiffs stated that, "[t]o the extent Plaintiffs' Amended Class Action Complaint seeks any prospective relief (i.e., declaratory or

injective relief), Plaintiffs did so in error and do not pursue further any arguments in pursuit of such a theory of relief." ROA at 32. In their reply to the individual-capacity claims, Plaintiffs noted that they no longer wish to pursue any *Bivens* claims against defendants. ROA at 61

The District Court issued a decision dismissing all claims on April 16, 2024.

## SUMMARY OF THE ARGUMENT

The crux of the District Court's dismissal[1] is that Plaintiffs' claims were moot because the government, including defendants, rescinded the vaccine mandate for civilian employees before the plaintiffs brought their suit. Precedent regarding the mootness doctrine does not support this conclusion, as the plaintiffs were seeking money damages for harms that occurred in the past. To the extent that Plaintiffs were seeking prospective relief, they agree that any request for such relief indeed was moot and dropped it. ROA at 32.

Citing a single case out of district court in Colorado, the District Court also opined that, although the plaintiffs mentioned religious beliefs regarding testing and masking, they did not go into enough detail about their religious beliefs to survive a motion to dismiss. ROA at 23. A simple statement that a plaintiff has a religious and that it conflicts with a work requirement is enough for the pleading stage of litigation,

---

[1] The District Court analyzed the complaints according to Fed. R. Civ. P. 12(b)(6) and did not mention Rule 12(b)(1).

and further details can be provided through testimony at the trial phase. To the extent that courts require more, this appears to be an extra-textual development that has arisen out of the COVID-19 context and requires correction. In any case, however, the plaintiff in this case did provide sufficient detail about their religious beliefs to survive a motion to dismiss.

# ARGUMENT

Plaintiffs Amy Arzamendi, Michael Orloff, and Brooke Stadler brought a claim alleging religious discrimination according to multiple theories under Title VII of the Civil Rights Act, the Religious Freedom Restoration Act, the Rehabilitation Act, and the U.S. Constitution. All of these claims included requests for monetary relief for harms alleged.

The District Court dismissed all claims, in the first place according to the theory that they were moot and they did not did not constitute employment harms, and as to claims referencing religious objections to testing and masking, according to the additional theory that the plaintiffs did not provide enough detail to survive a motion to dismiss.

## I. The Mootness Doctrine is Inapplicable to Plaintiff-Appellants' Claims for Money Damages

Regarding Mootness, the District Court concluded that, "the dispute ceased before this litigation even began, because the vaccine mandate was rescinded before these Plaintiffs filed suit." ROA at 22.

There is no basis in case law or elsewhere for the proposition that claims for money damages over past harms become moot when the policies or practices that bring about the harms cease.

The case law that the District Court cited was inapposite, or otherwise supported contradicted the conclusion that mootness was applicable to Appellants' claims:

- *United States v. Texas*, 599 U.S. 670 (2023), turned on questions of standing for states seeking to sue to block a federal immigration policy and that were seeking injunctive relief. *See, e.g., Id* at 717.

- *Hollis v. Biden*, 2023 U.S. App. LEXIS 12897 (5th Cir. May 18, 2023)(unpublished) concerned five federal contractors from Mississippi who were seeking injunctive relief from President Biden's vaccine mandate for contractors. This was a different mandate pursuant to a different Executive Order. The parties, furthermore, all agreed that the case was moot. *Id* at *2.

- In *Brindson v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017), the plaintiffs requested injunctive relief and nominal damages over a school's requirement that an objecting student recite the Mexican pledge

of allegiance. There the Court ruled that, "[t]he mootness doctrine applies to equitable relief but will not bar any claim for damages, including nominal damages." *Id* at 345, citing *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 n.31 (5th Cir. 2009) (collecting cases).

The *Morgan* footnote cited in *Brindison* collects a number of cases indicating that a request for damages, even nominal damages, is sufficient to avoid mootness:

> *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 601-603 (5th Cir. 2004) (recognizing *Ward v. Santa Fe Indep. Sch. Dist.*, 35 F. App'x 386 (5th Cir. 2002) (per curiam) (reversing earlier judgment that claim for nominal damages did not avoid mootness and holding that a claim for nominal damages was sufficient)); see also *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) (holding a plaintiff could seek nominal damages in the absence of other damages for an alleged constitutional violation under § 1983); *Green v. McKaskle*, 788 F.2d 1116 (5th Cir. 1986) (same); 13C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3533.3 (3d ed. 1998) ("A valid claim for nominal damages should avoid mootness."). This view is supported by our sister circuits. See *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001) (holding a claim for nominal damages avoids mootness); *Doe v. Delie*, 257 F.3d 309, 314 (3d. Cir. 2001) (same); *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 72 n.5 (4th Cir. 1983) (same); *Murray v. Bd. of Trs., Univ. of Louisville*, 659 F.2d 77, 79 (6th Cir. 1981) (same); *Bernhardt v. County of L.A.*, 279 F.3d 862, 871 (9th Cir. 2002) (same); *Utah Animal Rights Coalition v. Salt Lake City Co.*, 371 F.3d 1248 (10th Cir. 2004) (same). However, this rule has been challenged as "inconsistent with fundamental principles of justiciability." See *Utah Animal Rights Coalition*, 371 F.3d at 1263 (2004) (McConnell, J., concurring).

Where, as here, the plaintiffs request more than nominal damages, but rather compensatory damages arising out of an employment context where they experienced employment harms alongside of prolonged periods of stress and anxiety with both

physical and psychological manifestations, mootness is inapplicable, much more so than a case where only nominal damages are in play.

## II.     Plaintiffs Suffered Employment Harm

The Court continued, "Plaintiffs must allege some material employment-or-other-related injury which directly resulted from the enforcement of the *vaccine* mandate […] these Plaintiffs can allege no such injury because the policy was never enforced against them." ROA at 22. This is not correct.

Regarding named Plaintiff Amy Arzamendi, the pleadings stated that the Department "ignored her [religious accommodation] request [for the vaccine]." *Id* at 73. The Department "let Ms. Arzamendi languish in a cloud of fear and anxiety, wondering if each new day was the day DoD would discipline or terminate her for failing to get the vaccine." *Id.* She "lived in constant fear of having to choose between her personal faith and her livelihood. She felt singled-out, dirty, set-apart." *Id.* Finally, she concluded, "[a]s an extremely private person, it was stressful to share her vaccination status and the details of her religious faith with her employer. It was even more stressful as she received constant emails from her employer pressuring her to take the vaccine or follow testing protocols – even as her religious exemption request to the vaccine was still pending." *Id* at 74.

Plaintiff Michael Orloff, a veteran who "has commanded men in combat in both Iraq and Afghanistan and has seen combat five times," never received a response from

the Department, which "never processed it, never asked for additional information or clarification, and never engaged in an interactive process to help them make a determination as to whether or not it would grant or deny his religious accommodation request." Mr. Orloff "lived in constant fear that DoD would eventually deny his request and he would be disciplined and/or terminated." *Id.*

In addition, Mr. Orloff was subject to "constant punishment for his religious objections to the vaccine in the form of discriminatory testing, masking, and distancing requirements, including demonstrative public testing in front of coworkers." *Id* at 75-76. These measures were not required of those employees who did not share Mr. Orloff's religious beliefs, despite public pronouncements from the Centers for Disease Control that the vaccines then available did not prevent transmission of the disease. Mr. Orloff was denied important business travel and important work and promotional opportunities "required to succeed and/or advance in his job." *Id* at 76. He continued that he was:

> [U]nable to grow in my professional capacity as an acquisition officer working for the Army. I was unable to speak to people in the industry that I work in to understand the latest technologies that operate in the acquisition space. I was also prevented from hearing senior military leaders speak on behalf of acquisitions in the upcoming years that greatly impact my career field and path. I lost the opportunity to attend a conference with my peers and to be part of the team and suffered the embarrassment of not being allowed to attend with my colleagues. I would have been exposed to many emerging technologies and senior leader mentorship but that day I lost or was not afforded that opportunity due to my COVID vaccination state. In order to gain entry into the event, attendees must show proof of COVID vaccination status.

He continued,

> I have been under the duress of losing my job and under enormous
> stress. My supervisor Miranda Coleman barely spoke to me once she
> found out that I was not going to get COVID shot. I am not invited to
> meetings outside my Line of Effort. I wake up in the middle of the night
> with panic attacks. I am unable to sleep much at night due to the
> constant stress of losing my livelihood and the thought of having to sell
> my home. For weeks on end, the constant barrage of COVID emails
> stating that you have till 22 November 2021 to get your "vaccine" or
> face disciplinary actions. *Id.*

The Department constructively discharged Brooke Stadler, the third putative class agent. After ignoring her requests for accommodation, Ms. Stadler was left to "languish in a cloud of fear and anxiety, wondering if each new day was the day DoD would be disciplined or terminated her." *Id* at 78. She submitted multiple inquiries into the status of her accommodation request and also filed a religious accommodation request for the Department's testing requirement. The Department denied her accommodation request for testing and then placed her on administrative leave for four months. *Id.* Before resigning in June of 2022, Ms. Stadler submitted 16 inquiries into the status of her religious accommodation. *Id.* She spent a night in the hospital for stage 3 hypertension because of the stress the ordeal caused her, and this was in addition to "constant anxiety, panic attacks, chest pain, migraine headaches, bowel issues, loss of sleep, loss of appetite, inability to focus, dizziness, nausea, and the constant worry of the unknown." She finally resigned. *Id* at 79.

All three plaintiffs, and all putative class members, were forced to subject themselves to testing and masking when their work colleagues did not have to test and mask, despite the well-publicized knowledge that the COVID-19 vaccines did not prevent the spread of the vaccine. *Id* at 89, 49.

As the Supreme Court has recently clarified in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), a plaintiff need only show "some harm […] to prevail in a Title VII suit." *Id* at 972. "'Discriminate against' means treat worse." *Id* at 974. In *Muldrow*, the Court found that employment harm existed where a police officer experienced a transfer without a change in pay or rank. *Id* at 972 ("While Muldrow's rank and pay remained the same in the new position, her responsibilities, perks, and schedule did not.").

Here, just the imposition of a testing and masking requirement that had no scientific justification constitutes "some harm," where the Department chose to "treat" the Plaintiffs "worse."

More than this, however, Plaintiffs experienced significant delay regarding their religious accommodation requests. Courts have recognized significant delay to amount to a denial: "'a week-to-week, wait-and-see posture' amounts to no accommodation at all." *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 945 (6th Cir. 2006) (citing *EEOC v.*

*Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991). By virtue of the testing requirements they all experienced, their employer treated them as having a disease in violation of the Rehabilitation Act.

They experienced stress, delay, anxiety, and uncertainty over the lack of answers regarding their religious accommodation requests. They also experienced denial of work opportunities, including travel, training, and others. Under the standard set out in *Muldrow*, Plaintiffs experienced employment harm.

### III.  Plaintiffs' Masking and Testing Claims Were Sufficiently Articulated to Survive a Motion to Dismiss

As for religious beliefs related to masking and testing, although the Court assumed the sincerity of plaintiffs' religious beliefs, the Court concluded that, because they had not, "allege[d] some facts regarding the nature of her belief system, as well as facts connecting her objection to that belief system," their claims could not survive a motion to dismiss. ROA at 23, citing *Caspersen v. W. Union, LLC*, 2023 WL 6602123, at *7 (D. Colo. Oct. 10, 2023).

In the first place, it is not accurate that Plaintiffs had not alleged facts regarding their belief system. As the Court acknowledged, the pleadings alleged that "DoD placed Ms. Stadler on administrative leave . . . because she could not consent to the testing protocols, as they violated her religious beliefs;" that the "[Masking and testing] protocols were not required of employees who did not share Mr. Orloff's religious

14

beliefs;" and "When presented with information that DoD would require testing, masking, and distancing, Ms. Arzamendi filed a request for a religious exemption to these protocols . . . which [the Department] ultimately denied." ROA at 22-23.

Additionally, the pleadings stated, "[Ms. Stadler's] beliefs conflict with DoD's vaccine mandate and testing screening protocols. She states:

> When I was created, I was made in the image of God. I was knit together in my mother's womb and was given everything that made me unique. God created in me an immune system that works to protect me against the evils of this world. It is through my faith that I believe God has equipped my body to fight against a great number of evils that attack my system. This is the reason why I object and do not take vaccinations, medications, or treatments that my body and immune system can fight off on their own. This has been my stance for many years in which I have discontinued the use of certain medications, as well as exempted out of treatments of illnesses in which my body can expel on its own." *Id* at 77.

These pleadings explain how Ms. Stadler's beliefs regarding testing are intertwined with her beliefs regarding vaccination.

Altogether the pleadings provided enough details regarding religious beliefs to survive a motion to dismiss.

Additionally, however, the notion that a plaintiff or a group of plaintiffs must articulate their religious beliefs in detail for pleading purposes, rather than just state that they had religious beliefs and that they conflicted with a work requirement, is one that the District Court imported from Colorado (*Caspersen v. W. Union, LLC*, 2023 WL 6602123, at *7 (D. Colo. Oct. 10, 2023)), and is one that is in conflict with at least some Supreme Court precedent.

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court addressed the pleading standard that is appropriate in Title VII cases specifically. In that case, the Court rejected the notion that it had ever found that the *McDonnell Douglas* framework for establishing a prima facie case of discrimination under Title VII had applied to the pleading stage of litigation. *Id.*

In *Swierkiewicz*, citing Fed. R. Civ. P. 8(a), the Court found that the plaintiff's pleadings were sufficient because, "Petitioner alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination. These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. In addition, they state claims upon which relief could be granted under Title VII and the ADEA." *Id* at 514.

Although *Swierkiewicz* pre-dates the Court's holdings in *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009), its holding suggests that the two cases are not in conflict, and that courts must reconcile the two. This Southern District of Texas did so in *Rutter v. Picerne Dev. Corp.*, No. H-07-3002, 2007 U.S. Dist. LEXIS 90690, at *3 (S.D. Tex. Dec. 10, 2007), where it noted in part, the Court's own reconciliation of *Swierkiewicz* in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127

S. Ct. 1955, 1973-74 (2007): "**we do not require heightened fact pleading of specifics**, but only enough facts to state a claim to relief that is plausible on its face." (emphasis added).

Here, plaintiffs alleged, without heightened specifics, that their religious beliefs conflicted with their employer's work requirement, and that they suffered employment harm as a result, up to and including constructive discharge. This is enough to survive a motion to dismiss, and anything more in the context of religious beliefs appears to have arisen in the COVID-19 context exclusively.

## CONCLUSION

Appellants in this case brought claims for money damages to which the mootness doctrine does not apply. They articulated employment harms and religious beliefs about testing sufficient to sustain a claim beyond the motion to dismiss phase. Appellants therefore respectfully request this Court to reverse the District Court's holding and remand the case for consideration consistent with such a ruling.

SUBMITTED BY:
/s/Edward Scott Lloyd
*Lloyd Law Group, PLLC*
15 Chester Street
Front Royal, VA 22630
(540) 823-1110
Fax: (540) 583-4279
scott@lloydlg.com

# CERTIFICATE OF SERVICE

I certify that on August 19, 2024, the foregoing document was forwarded via electronic filing on today's date to the following parties/counsel:

Sarah Jane Clark
Defendant - Appellee
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
202-305-8727
sarah.clark@usdoj.gov

Robert Charles Merritt
Defendant - Appellee
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, N.W. Washington, DC 20005
robert.c.merritt@usdoj.gov


/s/Edward Scott Lloyd

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 3,206 words.


2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond 14.

/s/Edward Scott Lloyd