# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2025

Lyle W. Cayce
Clerk

No. 24-10557

Amy Arzamendi, *on behalf of herself and a class of similarly situated individuals*; Michael C. Orloff, *on behalf of himself and a class of similarly situated individuals*; Brooke Stadler, *on behalf of herself and a class of similarly situated individuals*,

*Plaintiffs—Appellants,*

*versus*

Pete Hegseth, *Secretary, U.S. Department of Defense, in both his individual and official capacity*; Kathleen H. Hicks, *Deputy Secretary of Defense, in both her individual and official capacity*; Gilbert R. Cisneros, Jr., *Vice Admiral, Under Secretary of Defense, in both his individual and official capacity*; The Department of Defense,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-770

Before Richman, Willett, and Douglas, *Circuit Judges.*

Per Curiam:[*]

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10557

Plaintiffs sued the Department of Defense and various officials alleging religious discrimination based on the Department's COVID-19 vaccination requirement and related testing, masking, and distancing policies. The district court dismissed Plaintiffs' claims challenging the vaccination requirement as moot, and their claims regarding the related policies as insufficiently pleaded. We AFFIRM as to the claims challenging the related policies and REVERSE as to the vaccination requirement claims. We REMAND the case for further proceedings.

## I.

In September 2021, President Biden issued Executive Order 14043, which required federal employees to be vaccinated against COVID-19, subject to any exemptions required by law. *See Requiring Coronavirus Disease 2019 Vaccination for Federal Employees*, Exec. Order No. 14,043, 86 Fed. Reg. 50,989 (Sept. 14, 2021). The Department of Defense ("DOD") implemented this requirement as to its civilian employees in an October 1, 2021, memorandum from the Deputy Secretary of Defense requiring that all such employees be "fully vaccinated" by November 22, 2021. The memorandum further noted that procedures for processing vaccination exemption requests would be published by the Under Secretary of Defense for Personnel and Readiness.

The Under Secretary later circulated a memorandum that reiterated the vaccination requirement and, in a section titled "Enforcement," explained that those who refused to be vaccinated or provide proof of vaccination "are subject to disciplinary measures, up to and including removal from Federal service, unless the . . . employee has received an exemption or the . . . employee's timely request for an exemption is pending a decision." Employees could request an exemption based on a medical condition or religious belief, practice, or observance, but the DOD cautioned

that exemptions would be granted "in limited circumstances and only where legally required." Until further guidance on processing exemptions was set forth, the memorandum instructed that no action be taken on any exemption requests.

The exemption process, as ultimately implemented, directed those seeking a medical exemption to complete DD Form 3176 and those seeking a religious exemption to complete DD Form 3177. The stated purpose of these forms was for the DOD to determine whether to grant requests for exemption from the COVID-19 vaccination requirement. The DOD further required unvaccinated employees to abide by certain guidelines, such as masking, testing, physical distancing, and travel limitations (collectively, "COVID-19 Guidelines"). All employees, vaccinated or unvaccinated, were required to attest to their vaccination status on DD Form 3175.

In November 2021, Amy Arzamendi, Michael Orloff, and Brooke Stadler (collectively, "Plaintiffs"), each used DD Form 3177 to request a religious exemption from the COVID-19 vaccination requirement based on their religious beliefs as Christians. Arzamendi "is a Christian who . . . believes that her body is God's temple and is careful about the foods she eats and medicines she takes." Because she believes that abortion is "morally wrong," she cannot "partake in medical products (vaccine or otherwise) that were tested, produced, or in any way tainted by aborted fetal cells, as was the case with the [COVID-19] vaccine." Orloff believes the COVID-19 vaccine "to be nefarious and an affront to God" for many reasons, including "the use of aborted fetal cells or fetal tissue" in the vaccine's development or the vaccine itself. And Stadler "has been a practicing Christian since childhood." She does "not take vaccinations, medications, or treatments" because she believes "God created in [her] an immune system that works to protect [her] from the evils of this world." In addition to submitting their requests for religious exemption to the vaccination requirement using DD

No. 24-10557

Form 3177, Arzamendi and Stadler further submitted DD Form 3175, attesting to their vaccination status and indicating that they had applied for a religious exemption that was pending. When Arzamendi contacted the appropriate personnel by email to inquire about the status of the exemption review process, the response stated that they did not have "a timeline on when and how the review process will be."

On January 21, 2022, while Plaintiffs' requests for exemption from the COVID-19 vaccine were still pending, the United States District Court for the Southern District of Texas issued a nationwide preliminary injunction preventing the government from implementing or enforcing Executive Order 14043's vaccination requirement. *See Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836–37 (S.D. Tex. 2022), *vacated*, 30 F.4th 503 (5th Cir. 2022), *reh'g en banc granted, panel opinion vacated*, 37 F.4th 1093 (5th Cir. 2022) (per curiam), *aff'd on reh'g en banc*, 63 F.4th 366 (5th Cir. 2023), *vacated as moot*, 144 S. Ct. 480, 480–81 (2023). The next day, Stadler sent an email inquiring about the status of her request for religious exemption from the vaccination requirement. In response, she received an email stating that there were no updates with respect to specific cases, but that the response team was "working the [sic] submitted exemption requests."

Arzamendi and Stadler also requested religious exemptions from certain COVID-19 Guidelines. Arzamendi requested a religious exemption from the protocols for testing, masking, and distancing. Stadler requested an exemption from testing and sought to be moved to a work area with a low transmission rate that did not require testing. The DOD denied these requests for exemption from the COVID-19 Guidelines. According to Plaintiffs, Stadler was placed on administrative leave for failure to comply with the testing requirements, thus prompting her to resign on June 1, 2022.

No. 24-10557

Approximately one year after the vaccination requirement was enjoined, the DOD discontinued the COVID-19 Guidelines. And in May 2023, President Biden rescinded the federal employee vaccination requirement, which had been paused since the nationwide injunction on January 21, 2022.

In July 2023, Plaintiffs sued the DOD and three of its senior officials on behalf of themselves and a putative class of "all civilian employees who worked for [the DOD] during the pandemic who filed a religious exemption request to the vaccine and were denied."

In their amended complaint, Plaintiffs asserted Title VII and Rehabilitation Act claims against the Secretary of Defense in his official capacity, Religious Freedom Restoration Act ("RFRA") claims against the DOD, as well as the Secretary of Defense, the Deputy Secretary of Defense, and the Under Secretary of Defense (collectively, "DOD officials"), in their official and individual capacities; and Fifth Amendment *Bivens* claims against the DOD officials in their individual capacities. Plaintiffs sought prospective injunctive relief and compensatory and punitive damages.

Defendants jointly filed two motions to dismiss the amended complaint: the first addressed the individual capacity claims, and the second addressed the official capacity claims. Defendants advanced several arguments in favor of dismissing Plaintiffs' individual capacity claims. As an initial matter, they argued that the claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Additionally, they contended that neither RFRA nor *Bivens* should be extended to provide relief in the context of Plaintiffs' claims. Lastly, they argued that qualified immunity bars Plaintiffs' RFRA and *Bivens* claims under Federal Rule of Civil Procedure 12(b)(6). As to the claims against the DOD and the DOD officials in their official capacities, Defendants argued

No. 24-10557

for dismissal based on: lack of standing; lack of subject matter jurisdiction over the RFRA damages claims due to sovereign immunity; improper venue for the Title VII claims and Rehabilitation Act claims brought by all plaintiffs except Arzamendi; and the insufficiency of the factual allegations to sustain Plaintiffs' Title VII and Rehabilitation Act claims.[1]

In their response to the motions to dismiss, Plaintiffs withdrew their *Bivens* claims and their claims for prospective relief. Plaintiffs also separately moved for class certification.[2]

The district court granted Defendants' motions, dismissing Plaintiffs' claims without prejudice. Without reaching the parties' arguments concerning the vaccination requirement, the court determined that the mootness doctrine deprived it of subject matter jurisdiction over claims related to the vaccination requirement because the policy was enjoined and rescinded before it could be enforced against Plaintiffs. The court further held that to the extent that Plaintiffs asserted claims challenging the COVID-19 Guidelines, such claims were insufficiently pleaded because Plaintiffs did not allege facts showing a conflict between their religious beliefs and the COVID-19 Guidelines. Plaintiffs timely appealed.

## II.

Plaintiffs argue that the district court erred in dismissing their claims challenging the vaccination requirement as moot. We review de novo legal questions relating to mootness. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013).

---

[1] Defendants also argued all nominal plaintiffs should be dismissed because there were no allegations in the amended complaint to state any claim brought by these plaintiffs.

[2] The district court stayed briefing on class certification while it considered the motions to dismiss.

No. 24-10557

Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008) (internal quotation marks omitted). Thus, the mootness doctrine prevents courts from hearing cases where a case or controversy no longer exists between the parties. *See Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017). The doctrine applies to equitable relief, but it will not bar any claim for damages, including nominal damages. *See Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 n.32 (5th Cir. 2009) (collecting cases).

The district court held that Plaintiffs' claims arising out of the vaccination requirement were moot because the requirement was never enforced against them due to its rescission. Plaintiffs argue that because they sought damages in addition to injunctive relief, their claims for damages were not mooted by the rescission. They further contend that, despite the rescission, they sufficiently pleaded that the vaccination requirement caused them to suffer harm.

Because Plaintiffs sought both injunctive relief and damages, the mootness doctrine does not apply to their claims for damages. *See Morgan*, 589 F.3d at 748 n.32. Accordingly, we REVERSE the district court's dismissal of these claims. As the district court's mootness determination prevented it from reaching the substance of the parties' arguments, we further REMAND for consideration of those arguments in the first instance.

No. 24-10557

III.

Plaintiffs next argue that the district court erred in dismissing their claims related to the COVID-19 Guidelines for failure to state a claim.

A.

Whether a complaint states a plausible claim to relief is reviewed de novo. *See Lopez v. City of Houston*, 617 F.3d 336, 339 (5th Cir. 2010). We "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (citation modified). Plausibility requires factual allegations that show that the plaintiff's claim to relief is more than "merely conceivable" and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Inclusive Cmtys. Project v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (citation modified). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore*, 28 F.4th 613, 616 (5th Cir. 2022) (citation modified).

B.

As an initial matter, Defendants dispute whether Plaintiffs asserted claims challenging the COVID-19 Guidelines separately from the vaccination requirement. Drawing all inferences in Plaintiffs' favor, there are allegations that expressly challenge certain aspects of the COVID-19 Guidelines to form the basis of Plaintiffs' religious discrimination claims under Title VII and RFRA.[3]  On appeal, however, Plaintiffs do not

---

[3] For example, with regard to Plaintiffs' Title VII failure-to-accommodate claim, the amended complaint states that "Plaintiffs hold sincere religious beliefs that conflict with Defendants' COVID-19 vaccine mandate and in some cases, its testing mandate,"

No. 24-10557

meaningfully address the district court's dismissal of their RFRA claims challenging the COVID-19 Guidelines.[4] We therefore limit our review to Plaintiffs' claims challenging the COVID-19 Guidelines under Title VII.[5] *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (explaining that claims not argued in an opening brief are abandoned).

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" or "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."    42 U.S.C. § 2000e-2(a)(1)–(2).    The

---

and "Defendants acted quickly in denying the testing exemption requests; they did not engage in any meaningful dialogue with Plaintiffs." As to Plaintiffs' hostile work environment claim, the amended complaint states that Defendants harassed Plaintiffs through "constant threats of discipline and/or termination for not following vaccine and testing protocols." In support of Plaintiffs' claims under RFRA, they allege that similar to the vaccination requirement, Defendants substantially burdened their religious beliefs by "requiring testing, stigmatizing masking and distancing, and limiting travel and professional opportunities because of Plaintiffs' disfavored religious beliefs."

[4] Although Plaintiffs point out that they brought claims under RFRA, their statement of the issues and arguments related to their claims challenging the COVID-19 Guidelines focus on Title VII.

[5] We further note that the district court's opinion analyzed the sufficiency of Plaintiffs' claims arising from the COVID-19 Guidelines under Title VII and RFRA and the final judgment dismissed the entire case without prejudice in accordance with the district court's order granting Defendants' motions to dismiss. To the extent that Plaintiffs challenged the COVID-19 Guidelines as violative of the Rehabilitation Act, such claims are abandoned because Plaintiffs do not contend on appeal that the district court's final judgment overlooked Rehabilitation Act claims challenging the COVID-19 Guidelines. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

No. 24-10557

amended complaint asserts Title VII religious discrimination claims based on theories of disparate treatment, failure to accommodate, hostile work environment, and disparate impact. However, the only viable argument Plaintiffs raise for reversal of the district court's dismissal of their claims related to the COVID-19 Guidelines is that they alleged sufficient facts showing that their religious beliefs conflicted with their employer's work requirement—a necessary element of a Title VII claim for failure to accommodate.[6] *See Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014). Thus, Plaintiffs forfeited by insufficient briefing any challenge to the dismissal of their Title VII claims related to the COVID-19 Guidelines that is not based on a failure to accommodate. *See Hudson v. Lincare*, 58 F.4th 222, 229 n.5 (5th Cir. 2023).

Title VII imposes a statutory obligation on employers to make reasonable accommodations for the religious observances of their employees, so long as the accommodation does not impose undue hardship on the employer. *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). To prevail on a Title VII failure-to-accommodate claim, a plaintiff must establish the following elements of a prima facie case: "that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013). A plaintiff need not "submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage," but she

---

[6] Plaintiffs also assert that the district court erred by finding that they did not plead facts showing the nature of their religious beliefs, but the district court dismissed the claims challenging the COVID-19 Guidelines on the basis that Plaintiffs failed to allege how their religious beliefs were connected to their objection to the guidelines, not because they failed to allege facts regarding the sincerity of their belief system.

No. 24-10557

must "plead sufficient facts on all of the ultimate elements," such that the claim is plausible. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam).

For failure-to-accommodate religious discrimination claims, "the rule . . . is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). The Supreme Court has explained that this means an "employer violates Title VII" if the employee "actually requires an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision" to impose an adverse employment action. *Id.* at 774. Thus, without sufficient factual allegations showing a conflict between a party's religious beliefs and a work requirement, a plaintiff fails to plead an "ultimate element[]" of their failure-to-accommodate claim. *Chhim*, 836 F.3d at 470.

Plaintiffs contend that the district court improperly dismissed their claims against the COVID-19 Guidelines for failure to allege a conflict between their religious beliefs and the COVID-19 Guidelines because the amended complaint states that the COVID-19 Guidelines "were not required of employees who did not share Orloff's religious beliefs;" that Stadler was placed on administrative leave "because she could not consent to the testing protocols, as they violated her religious beliefs," and she does "not take vaccinations, medications, or treatments" because of her belief that "God created in [her] an immune system that works to protect her against the evils of the world;" and that Arzamendi filed a request for religious exemption from the COVID-19 Guidelines. Even without these allegations, Plaintiffs assert that it is sufficient that the complaint states their religious beliefs conflicted with a work requirement. We address each argument in turn.

No. 24-10557

Orloff's assertions that the COVID-19 Guidelines were not required of others who did not share his beliefs says nothing about whether his religious beliefs conflicted with the policies. As to Stadler, the allegation that the testing requirements violated her religious beliefs is devoid of factual development. And because the COVID-19 Guidelines—testing, masking, and distancing—are not "vaccinations, medications, or treatments," the allegations that she refrains from taking the latter three based on her belief that "God created in [her] an immune system" is insufficient to show a conflict between her religious beliefs and the COVID-19 Guidelines. *Cf. Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 902 (8th Cir. 2024) (holding that plaintiffs plausibly pled a conflict between their religious beliefs and their employer's testing requirement when one plaintiff alleged that because "she believes her body is a temple for the Holy Spirit . . . [s]he does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or allowing testing of her body when it is not necessary," and the other alleged that "[s]hifting [her] faith from [her] Creator to medicine is the equivalent of committing idolatry-holding medicine in greater esteem then Elohim" and "redundant intrusive testing of healthy, asymptomatic humans is irresponsible and crosses the line violating [her] conscience before Elohim").[7] Accordingly, Orloff's and Stadler's claims challenging the COVID-19 Guidelines were properly dismissed.

Arzamendi's claim presents the slightly closer question of whether a plaintiff plausibly pleads a conflict between her religious beliefs and a work

---

[7] Although Plaintiffs do not assert this as a basis for reversal, Stadler also submitted a request for exemption from the testing requirement. However, the fact of an exemption request, alone, does not plausibly establish a religious conflict for the reasons explained *infra* Part III.B.

requirement by alleging that she requested a religious exemption from the requirement.

In *E.E.O.C. v. Abercrombie*, an employer with a policy that prohibited wearing "caps" declined to hire an applicant who it believed wore a headscarf because of her faith. *Abercrombie*, 575 U.S. at 770. The EEOC sued on behalf of the applicant and the district court granted summary judgment in favor of the EEOC on the issue of liability. *Id.* at 771. The Tenth Circuit reversed, concluding that an employer is not liable for failing to accommodate a religious practice until the applicant or employee provides the employer with actual notice of her need for an accommodation. *Id.* at 771. Reversing the Tenth Circuit, the Supreme Court held that an applicant need only establish that her need for accommodation was a motivating factor in the employer's decision. *Id.* at 772. Requests for religious accommodation, it explained, "may make it easier to infer motive." *Id.* at 774. The Court did not, however, provide guidance on whether a request for religious accommodation, on its own, demonstrates that an employee or applicant "actually requires an accommodation of [a] religious practice." *Id.* at 773.

Our precedent, on the other hand, has largely focused on whether the practice or belief that allegedly conflicts with a work requirement is religious in nature. Through this body of caselaw we have made clear that judicial examination of religious beliefs is limited, as we will generally "tak[e] parties at their word regarding their own religious convictions." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *1 n.2 (5th Cir. Feb. 17, 2022) (per curiam), *reh'g en banc denied*, 45 F.4th 877 (5th Cir. 2022); *see also Tagore*, 735 F.3d at 328–29 (explaining that "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions"); *Davis*, 765 F.3d at 486 ("[We have] cautioned that judicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'" (quoting *Tagore*, 735 F.3d

No. 24-10557

at 328)). But in these cases, the plaintiff's asserted beliefs clearly implicated a work policy. *See Tagore*, 735 F.3d at 328 (plaintiff asserted a sincerely held belief in a religious practice of wearing a kirpan with a blade longer than 2.5 inches that conflicted with the statutorily permitted blade length); *Davis*, 765 F.3d at 483 (plaintiff contended that her religious beliefs required her to attend a church event on a day that she was scheduled to work). Here, the amended complaint contains no allegations of Arzamendi's religious beliefs related to the COVID-19 Guidelines. Instead, the allegations either demonstrate a religious conflict between Arzamendi's beliefs and the vaccination requirement or suggest a non-religious conflict with the COVID-19 Guidelines.[8]

Perhaps because the amended complaint lacks any description of Arzamendi's convictions with regard to the COVID-19 Guidelines, Plaintiffs point to the allegation that she requested a religious exemption. The closest we have come to addressing whether a religious exemption request itself establishes a conflict between a religious belief and work requirement was our decision in *Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *2 (5th Cir. Dec. 16, 2024). There, we reversed in part the district court's grant of an employer's motion to dismiss a religious discrimination claim for failure to state a claim. *Id.* Although Sibley had submitted numerous requests to her employer for a religious accommodation, the district court determined that none of them informed

---

[8] *See* Am. Compl. at 9 (alleging that Arzamendi requested a religious exemption from the vaccine because she "is a Christian who has strongly held beliefs about what she puts into her body. She believes that her body is God's temple and is careful about the foods she eats and the medicines she takes. She also believes that abortion is morally wrong and therefore could not partake in a medical product (vaccine or otherwise) that was tested, produced, or in any way tainted by aborted fetal cells, *as was the case with the vaccine*") (emphasis added); *see id.* at 26 (alleging that Arzamendi filed a religious exemption request "to avoid the invasive testing protocols").

No. 24-10557

her employer that "she had a bona fide religious belief that conflicted with an employment requirement." *Id.* at *3. On review, we assumed the sincerity of Sibley's beliefs and construed the district court's ruling "as questioning only whether Sibley sufficiently alleged that [her employer] was informed of the alleged religious conflict." *Id.* at *3 n.2 (emphasis omitted). Citing with approval the Sixth Circuit's decision in *DeVore v. University of Kentucky Board of Trustees*, 118 F.4th 839, 846 (6th Cir. 2024), we acknowledged that while "'[t]he judicial task in assessing evidence of a religious conflict is narrow,'" it ensures that "'the asserted conflict is sincerely based on a religious belief, rather than some other motivation, *and* that the belief actually conflicts with a workplace policy.'" *Sibley*, 2024 WL 5118489, at *3 n.2 (quoting *DeVore*, 118 F.4th at 846) (emphasis added).[9]

Construing all reasonable inferences in the complaint in the light most favorable to Sibley, the explanations provided in Sibley's religious accommodation requests, were sufficient to establish a religious conflict with her employer's vaccination requirement as needed to survive a motion to dismiss.[10] *Id.* at *4. Sibley's third exemption request "explained that her

---

[9] In *DeVore*, the Sixth Circuit considered in its analysis of whether the plaintiff successfully asserted a conflict between her sincerely held religious beliefs and the University's vaccinate-or-test requirement, not only that the plaintiff requested an accommodation, but also whether the reasons offered by the plaintiff demonstrated a conflict with the testing options the University provided. *See DeVore*, 118 F.4th at 846. The Seventh Circuit has taken a similar approach. *See Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024) (determining that the plaintiffs sufficiently alleged a conflict between their employer's COVID-19 vaccination requirement and their religious beliefs because the statements in their requests explained the connection between their objection to the vaccine and their religious beliefs).

[10] Sibley's complaint referenced and relied upon four religious exemption requests she had submitted to her employer, which the defendants attached to their motion to dismiss. *Sibley*, 2024 WL 5118489, at *2–3. In ruling on the defendants' motion, the district court considered attachments to both Sibley's complaint and the motion, finding that Sibley's exemption requests, among other things, were referenced in and central to her

No. 24-10557

Creator gave her the right to bodily autonomy, accompanied by 'the right to decline all attempts to access, influence and/or otherwise alter any and all of [her] God given biological material and or biological systems which are unique, flawless and original in design and craftsmanship,'" and that she "require[d] that any and all products offered to [her] by [her] employer or workplace be both entirely retrievable from and also removable in its entirety from [her] body, person, and womanhood[.]" *Id.* at *4 (alterations in original). This explanation, we held, was sufficient to show a religious conflict in the face of a Rule 12(b)(6) motion to dismiss.[11]

Our task is similar here. We assume the sincerity of Arzamendi's beliefs while undertaking to ensure that the Plaintiffs sufficiently plead a conflict between those beliefs and the COVID-19 Guidelines. But inhibiting our ability to draw the reasonable inference that Arzamendi's religious beliefs conflicted with COVID-19 Guidelines' testing requirement is the dearth of allegations otherwise tying Arzamendi's objection to the COVID-19 Guidelines to her religious beliefs. *See Tagore*, 735 F.3d at 328–29; *Davis*, 765 F.3d at 486–87. Without more to explain the basis for Arzamendi's request, or the conflict between her beliefs and the COVID-19 Guidelines, reversal would require us to conclude, without supporting facts, that such a conflict existed. This we cannot do. *See Chhim*, 836 F. 3d at 470 (explaining that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "plead sufficient facts on all of the ultimate elements," such that the claim is plausible).

---

complaint. We agreed and likewise considered those documents in our review of the district court's dismissal. *See Allen*, 28 F.4th at 616.

[11] Though we noted that Sibley provided this explanation in response to the exemption form's request that she do so, we eschewed this request only insofar as it sought "to justify a party's sincere belief." *Sibley*, 2024 WL 5118489, at *4 n.3. This is consistent with our precedent accepting "claims of sincere religious belief . . . on little more than the plaintiff's credible assertions." *Tagore*, 735 F.3d at 328.

No. 24-10557

Accordingly, the district court did not err in dismissing Arzamendi's claims challenging the COVID-19 Guidelines.

## IV.

For the reasons explained, we AFFIRM the dismissal of Plaintiffs' claims challenging the COVID-19 Guidelines, we REVERSE the district court's dismissal of Plaintiffs' claims for damages related to the vaccination requirement, and we REMAND the case for further proceedings.

No. 24-10557

DON R. WILLETT, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority on two points: first, mootness does not bar Plaintiffs' challenges to the vaccination mandate; and second, Orloff did not adequately plead a religious objection to the COVID-19 Guidelines under Title VII. But as to Stadler and Arzamendi, I respectfully part ways.[1]

At this early stage, our task is modest: read the complaint as a whole, accept its well-pleaded allegations as true, and ask a simple question: have Plaintiffs plausibly alleged a religious conflict with the COVID-19 Guidelines. The majority demands more—parsing the complaint like a record and seeking proof instead of plausibility. But Rule 12(b)(6) is a gate, not a gauntlet. Applying its deferential standard,[2] I would hold that Stadler and Arzamendi have plausibly pleaded such a conflict. On that issue, I respectfully dissent.

I

The standards at this stage bear brief emphasis. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] That bar is intentionally low.

---

[1] I agree with the majority that Orloff did not plausibly allege a religious conflict with the COVID-19 Guidelines. His factual allegations discuss only an objection to vaccination and make no reference to a religious objection to testing or masking. And, though not dispositive, the pleadings contain no facts showing that Orloff sought an exemption from those Guidelines. But not so for Stadler and Arzamendi. Their allegations demonstrate a conflict with the COVID-19 Guidelines. *Infra* Parts II–III.

Additionally, the majority adopts the term "COVID-19 Guidelines" to describe the Department of Defense's policy requiring unvaccinated employees to comply with testing, masking, and distancing protocols. *Ante*, at 3. I follow suit.

[2] *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (describing Rule 12(b)(6) standard as a "low bar.").

[3] FED. R. CIV. P. 8(a)(2).

No. 24-10557

A complaint survives dismissal so long as it pleads "enough facts to state a claim to relief that is plausible on its face."[4] A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] Threadbare recitals and conclusory statements will not do, of course[6]—but Rule 8 still "does not require 'detailed factual allegations.'"[7] At this threshold stage, our task is straightforward: review the complaint *de novo* and accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[8]

## II

With those standards freshly in mind, I turn to the numerous factual allegations showing Stadler's and Arzamendi's religious objections to the COVID-19 Guidelines.[9]

As for Stadler, the complaint offers at least six separate allegations showing her religious objection to those Guidelines. First, it states plainly: "Ms. Stadler has been a practicing Christian since childhood and her beliefs conflict with DoD's vaccine mandate and testing screening protocols." Second, the complaint records her own words:

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.*

[7] *Id.* (quoting *Twombly*, 550 U.S. at 555)).

[8] *Martin K. Eby Constr. Co. v. Dall. Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).

[9] Since the district court dismissed Appellants' claims concerning the COVID-19 Guidelines for lack of a pleaded conflict between their beliefs and those Guidelines, I recount only the allegations relevant to that issue—not to the other Title VII elements. *See infra* Part III.

No. 24-10557

> When I was created, I was made in the image of God. I was knit together in my mother's womb and was given everything that made me unique. God created in me an immune system that works to protect me against the evils of this world. It is through my faith that I believe God has equipped my body to fight against a great number of evils that attack my system. This is the reason why I object and do not take vaccinations, medications, or treatments that my body and immune system can fight off on their own. This has been my stance for many years in which I have discontinued the use of certain medications, as well as exempted out of treatments of illnesses in which my body can expel on its own.

Third, Stadler alleged that five months after seeking a vaccine exemption, she "also filed a religious accommodation request to avoid the testing protocols." Fourth, she claimed the Department of Defense placed her on "administrative leave for over four months because she could not consent to the testing protocols, as they violated her religious beliefs." Fifth, she asserted that "[a]s she feared from the beginning, she was forced to choose between her religion and her livelihood." And finally, the complaint underscores that "Ms. Stadler and Ms. Arzamendi each filed religious accommodation requests to avoid the invasive testing protocols, which DoD denied outright."

So too with Arzamendi. She likewise pleaded detailed allegations showing a religious objection to the COVID-19 Guidelines. According to the complaint:

> Ms. Arzamendi is a Christian who has strongly held beliefs about what she puts into her body. She believes that her body is God's temple and is careful about the foods she eats and the medicines she takes. She also believes that abortion is morally wrong and therefore could not partake in a medical product

No. 24-10557

(vaccine or otherwise) that was tested, produced, or in any way tainted by aborted fetal cells, as was the case with the vaccine.

The pleadings continue: "[w]hen presented with information that DoD would require testing, masking, and distancing, Ms. Arzamendi filed a request for a religious exemption to these protocols." She filed that exemption request specifically "to avoid the invasive testing protocols." "From the time she submitted her request for a religious exemption, Ms. Arzamendi lived in constant fear of having to choose between her personal faith and her livelihood."

With the Rule 12(b)(6) standards clarified—and Stadler's and Arzamendi's faith-based allegations set out in full—the district court's and the majority's missteps become all the more apparent.

## III

For starters, instead of relying on—or even mentioning—the elements of a Title VII religious-discrimination claim, the district court charted its own course. It cited an unpublished District of Colorado decision to justify dismissing Plaintiffs' claims involving the testing and masking protocols.[10] To state a Title VII religious-discrimination claim, a plaintiff must allege "that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement."[11] Without

---

[10] *Arzamendi v. Austin*, 4:23-CV-770, 2024 WL 1641962, at *3 (N.D. Tex. Apr. 16, 2024) (citing *Caspersen v. W. Union LLC*, No. 23-CV-923, 2023 WL 6602123 (D. Colo. Oct. 10, 2023)).

[11] *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014). Importantly, "the Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements." *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019)

No. 24-10557

saying so outright, the district court apparently concluded that Plaintiffs failed to allege the second element—a conflict between their faith and the COVID-19 Guidelines.[12] The dispute thus narrows to that point.

Central to both the district court's and the majority's reasoning is the notion that Plaintiffs needed to plead *more*—more factual detail, more explanation—about their religious objections to the Guidelines. The district court faulted Plaintiffs for not showing "*how* masking and testing in and of themselves violated their fundamental religious beliefs."[13] And the majority similarly faults them for not explicitly "tying" their objections to the specific Guidelines.[14] But that reasoning is precisely the kind we rejected in *Cicalese v. University of Texas Medical Branch*.[15]

In *Cicalese*, a couple brought Title VII national-origin-discrimination claims.[16] The district court dismissed them, "fault[ing] Appellants for failing to allege precisely" when certain derogatory remarks were made and for not showing that adverse actions were "taken *because of* their national origin."[17] We explained that this "analysis of the complaint's allegations—scrutinizing whether Appellants' fellow employees were really 'similarly situated' . . . was

---

(citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002)). Thus, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.* (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

[12] *Arzamendi*, 2024 WL 1641962, at *3.

[13] *Id.* (emphasis in original).

[14] *Ante*, at 17.

[15] 924 F.3d at 768.

[16] *Id.* at 765.

[17] *Id.* at 767–68 (emphasis in original).

more suited to the summary judgment phase."[18] We cautioned that courts err when they "inappropriately heighten[] the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis . . . in response to a motion to dismiss."[19] We reversed for that very reason.[20]

The majority makes the same mistake here. Zeroing in on Stadler's objection to "vaccinations, medications, or treatments," it reduces her religious objection to the vaccine alone. It then "scrutiniz[es]" her allegation that "God created in [her] an immune system" and concludes that such language cannot encompass testing protocols. But the complaint says—just lines earlier—"her beliefs conflict with DoD's vaccine mandate *and* testing screening protocols." Both Stadler and Arzamendi plausibly alleged a religious conflict with the vaccination requirement. But to lament a "dearth of allegations" showing conflict with the COVID-19 Guidelines is simply wrong.

The majority's treatment of Arzamendi fares no better. Though it calls her case a "closer question," it again takes a reductionist view. The majority discounts her allegations that she has a religious objection to the "invasive testing protocols," as "a Christian who has strongly held beliefs about what she puts into her body" and that "her body is a temple." The majority concludes these allegations "either demonstrate a religious conflict between Arzamendi's beliefs and the vaccination requirement or suggest a non-religious conflict with the COVID-19 Guidelines."[21] That reading ignores

---

[18] *Id.* at 768.

[19] *Id.*

[20] *Id.*

[21] *Ante*, at 14.

our duty to view the allegations "in the light most favorable to" Arzamendi.[22] On the majority's telling, Arzamendi's own faith cannot possibly conflict with the Guidelines—even though the complaint explicitly states: "When presented with information that DoD would require testing, masking, and distancing, Ms. Arzamendi filed a request for a religious exemption to these protocols." The majority seems to know more about Plaintiffs' religious convictions than they do.[23]

To justify its heightened pleading requirement, the majority cites two of our cases, *Tagore v. United States* and *Davis v. Fort Bend County*,[24] and one Sixth Circuit case, *DeVore v. University of Kentucky Board of Trustees*.[25] But all were decided at summary judgment—with the benefit of discovery and fact-rich records[26]—not at the pleading stage. We're not there yet. As *Cicalese* made clear, "[a]t this stage of the proceedings, a plaintiff need only

---

[22] *Martin*, 369 F.3d at 467.

[23] Surprisingly, the majority recognizes our guidance that "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions." *Ante*, at 14. Were the majority to follow that guidance here, this case might well come out differently.

[24] *Ante*, at 17 (first citing *Tagore v. United States*, 735 F.3d 324, 328–29 (5th Cir. 2013); then citing *Davis*, 765 F.3d at 486–87).

[25] *Ante*, at 15–16 n.9 (discussing *DeVore v. Univ. of Ky. Bd. of Tr.*, 118 F.4th 839 (6th Cir. 2024)).

[26] *See Tagore*, 735 F.3d at 328–29 (describing "hundreds of pages of deposition testimony and exhibits" as "ample . . . voluminous evidence" to create a genuine issue of material fact); *see also Davis*, 765 F.3d at 486–87 (holding a religious claimant's "testimony about her own sincere belief" had "sufficiently evidenced a genuine dispute of material fact").

No. 24-10557

plausibly allege facts" showing a claim for relief.[27] Stadler and Arzamendi "surmounted that lower bar."[28]

We said the same just last year in *Sibley*. There, an employee brought a Title VII religious-discrimination claim after being denied three exemption requests from a vaccination policy.[29] We reviewed her allegations for plausibility and, "constru[*ing*] all reasonable inferences . . . in the light most favorable to Sibley,"[30] applied "the deferential Rule 12(b)(6) standard" to reverse the dismissal.[31] The majority today misreads *Sibley* as demanding an explicit link between belief and policy.[32] *Sibley* imposed no such rule. It

---

[27] *Cicalese*, 924 F.3d at 768.

[28] *Id.*

[29] *See Sibley* , 2024 WL 5118489, at *2.

[30] *Id.* at *4 (cleaned up).

[31] *Id.*

[32] *Ante*, at 15–17.

The majority also blesses the allegations in *Ringhofer v. Mayo Clinic, Ambulance* as sufficient to plead a religious conflict with a testing policy. *Ante*, at 12 (discussing 102 F.4th 894, 902 (8th Cir. 2024)). But Stadler's and Arzamendi's allegations are far closer to those in *Ringhofer* than the majority admits. One plaintiff there alleged "she believes her body is a temple . . . [s]he does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or allowing testing of her body when it is not necessary." *Ringhofer*, 102 F.4th at 902. That sounds an awful lot like Stadler—who believes that "God created in [her] an immune system" and objects to her to "vaccinations, medications, or treatments that [her] body and immune system can fight off on their own" and whose beliefs "conflict with DoD's vaccine mandate and testing screening protocols")—and Arzamendi, "a Christian who has strongly held beliefs about what she puts into her body," who "believes that her body is God's temple," and who "filed [a] religious accommodation request[] to avoid invasive testing protocols").

The Eighth Circuit put it plainly: "At this early stage . . . the complaints are read as a whole and the nonmoving party receives the benefit of reasonable inferences." *Id.* at 901. Here, the majority commits the very error the Eighth Circuit warned against—parsing the complaint "piece by piece to determine whether each allegation, in isolation, is plausible." *Id.* (quotations omitted).

No. 24-10557

simply applied Rule 12(b)(6) and held that Sibley "provide[d] a sufficient factual basis" for her claim.[33] So too here. Stadler and Arzamendi cleared the same bar.

The majority is right that we "tak[e] parties at their word regarding their own religious convictions."[34] But it declines to take Stadler and Arzamendi at theirs. Viewing the pleadings as Rule 12(b)(6) requires—"in the light most favorable" to the claimants—their Title VII claims challenging the COVID-19 Guidelines easily survive. There's a reason we called it the "*deferential* Rule 12(b)(6) standard."[35]

\*　　\*　　\*

The majority demands certainty where the law requires only plausibility. Rule 12(b)(6) sets a low bar by design. It was meant to screen the courthouse door, not to seal it. I would REVERSE the dismissal of Stadler's and Arzamendi's claims challenging the COVID-19 Guidelines and REMAND accordingly.

With deepest respect, I dissent.

---

[33] *Sibley*, 2024 WL 5118489, at \*4.

[34] *Ante*, at 14 (quoting *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at \*1 n.2 (5th Cir. Feb. 17, 2022) (per curiam)).

[35] *See Sibley*, 2024 WL 5118489, at \*4 (emphasis added).